KENDALL R. LEWIS *v.* FRAZAO BUILDING
CORPORATION ET AL.
(AC 29126)

Flynn, C. J., and Bishop and Borden, Js.

Argued January 20—officially released June 23, 2009

*James Colin Mulholland,* for the appellant (plaintiff).

*Katherine L. Matthews,* with whom was *R. Bradley Wolfe,* for the appellees (defendants).

*Opinion*

BISHOP, J. This case concerns a home improvement contract dispute. The matter was referred to attorney fact finder Tegan Blackburn, who filed a report, on the basis of which the trial court subsequently rendered judgment awarding only a portion of the damages claimed by the plaintiff, Kendall R. Lewis, against the defendant Frazao Building Corporation (Frazao Building) and no damages against the individual defendant Dennis Frazao. The plaintiff claims on appeal that the court improperly (1) found that there was sufficient

evidence in the record to support the findings of fact made by the attorney fact finder, (2) considered the plaintiff's claim under the clearly erroneous standard of review and (3) failed to find Frazao personally liable for the breach of contract. We affirm the judgment of the trial court.

The following facts were adduced during hearings before the fact finder and subsequently accepted by the trial court. On April 17, 2003, the plaintiff and Frazao Building entered into a home improvement contract regarding renovations to be done to the plaintiff's home. Under the terms of the contract, the work was to be completed in accordance with plans prepared by the project's architect, Hartford Design Associates, for the sum of $43,015. The contract provided that certain changes had been discussed and approved for the installation of a basement hatchway for $1025, the installation of heating radiators for $3500, the installation of Trex flooring for an additional $850 and the reroofing of the front of the house for an additional $1100. The contract further provided that all fixtures were to be installed by the plumber.[1] As of July 10, 2003, the plaintiff had paid the defendant $28,951.

The parties' professional relationship began to deteriorate following the plaintiff's request for numerous changes to the original plans. The plaintiff's proposed changes, which were not incorporated into the contract by written change order, primarily concerned the deck, the roof and the dimensions of a bathroom and its adjoining wall. Because the parties could not agree on what the building code requirements were for the proposed changes, the defendant was hesitant to proceed because he would have to correct, at his expense, any

[1] Pursuant to the corresponding blueprints, the roughed in plumbing for the bathroom toilet and sink were to be completed by Frazao Building, and the plaintiff was responsible for the bathroom fixtures.

renovations later determined to be in violation of the building code. Accordingly, the parties were unable to reach a resolution concerning the plaintiff's proposed modifications. On August 9, 2003, the plaintiff sent Frazao Building a letter stating that the remaining work was to be completed in one week. Frazao Building construed the letter as terminating its services, and on August 13, 2003, it ceased working on the project. The plaintiff claims that he incurred additional expenses to complete the project and to repair some of Frazao Building's work.

On February 1, 2004, the plaintiff filed the present action against the defendants, seeking damages totaling $17,777.65 for breach of contract. The complaint alleged, inter alia, that Frazao Building and Frazao "unilaterally ceased work on the contract leaving the home improvements called for under the contract substantially incomplete" and that the plaintiff suffered actual losses as a consequence of the defendants' breach. The defendants filed an answer and special defense on May 18, 2004, asserting that the plaintiff had terminated their services, thereby excusing the defendants' performance.

Pursuant to Practice Book § 23-53,[2] the case was referred to an attorney fact finder, who heard evidence on the matter on April 18, May 16 and July 11, 2005. The fact finder concluded that Frazao Building did not meet its burden of proof by offering any evidence or credible testimony that it was discharged or otherwise justified in abandoning the project. The fact finder noted that the plaintiff offered extensive evidence of

---

[2] Practice Book § 23-53 provides in relevant part: "The court, on its own motion, may refer to a fact finder any contract action pending in the superior court . . . in which money damages only are claimed, which is based upon an express or implied promise to pay a definite sum, and in which the amount, legal interest or property in controversy is less than $50,000, exclusive of interest and costs. . . ."

his material and labor costs. The fact finder determined from the plaintiff's testimony that numerous changes not part of the original contract were made during the course of renovations, that certain areas of work were to be completed at an additional cost under the original contract and that the construction delays were due to the plaintiff's proposed changes. The fact finder concluded that the completed project improvements were not the same as those contemplated under the original contract. The fact finder recommended that the plaintiff be awarded $5000 in contract damages and $11,000 in attorney's fees for a total award of $16,000. The fact finder further recommended that Frazao Building should only be required to remove debris from the project site, to repair damage to the home's landscaping and to return the site to its original condition because those items fell within the scope of the original contract. The fact finder did not find that Frazao should be held individually liable.

The plaintiff objected to the acceptance of the findings of fact on December 6, 2005, arguing that (1) there was no evidence in the record to support the fact finder's finding that the project improvements as completed were not contemplated in the original contract, (2) there was no evidence in the record to support the fact finder's finding that certain changes made during the course of renovations were not included in the original contract or contract price, (3) the fact finder's finding that certain projects were to be completed at an extra cost was legally incorrect because the contract unambiguously includes these costs, (4) there was substantial credible evidence in the record to support a finding that the plaintiff incurred additional costs to correct work inadequately performed by the defendants and (5) there was substantial credible evidence in the record to support a judgment against Frazao. Following the filing of the

plaintiff's objections, the fact finder submitted supplemental findings of fact, and, on October 26, 2006, the court, *Miller, J.*, accepted the fact finder's report and supplemental findings over the plaintiff's objections. This appeal followed. Additional facts will be set forth as necessary.

We begin our analysis by setting forth the applicable standard of review. "Attorney fact finders are empowered to hear and decide issues of fact on contract actions pending in the Superior Court . . . . On appeal, [o]ur function . . . is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Mastroianni* v. *Fairfield County Paving, LLC*, 106 Conn. App. 330, 335, 942 A.2d 418 (2008). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Carroll* v. *Perugini*, 83 Conn. App. 336, 339–40, 848 A.2d 1262 (2004).

"Finally, we note that, because the attorney [fact finder] does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by

an attorney [fact finder] have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney fact finder], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." (Internal quotation marks omitted.) *Mastroianni* v. *Fairfield County Paving, LLC,* supra, 106 Conn. App. 335. With the foregoing in mind, we now turn to the plaintiff's specific claims.

I

The plaintiff first claims that the court improperly found that there was sufficient evidence in the record to support the findings of fact made by the fact finder. Specifically, the plaintiff argues that he offered evidence showing that he had incurred additional costs to complete and to correct work performed by the defendants and that those project improvements were contemplated under the original contract. He claims, therefore, that the fact finder's findings from the evidence were clearly erroneous. We do not agree.

The following additional facts are necessary for our review of the plaintiff's claim. During the hearings before the fact finder, the plaintiff offered invoices, receipts and a one page summary sheet to show the construction costs that he had incurred from other tradespeople to complete the project. The sheet listed a number of contractors, the work that they had performed and the cost of their services. The plaintiff claims that these contractors completed and repaired work that had been included in the architect's plans and that, under the original contract, the defendants were obligated to complete the project in accordance with those plans. Additionally, the plaintiff offered testimony, photographs of the project site and a building inspector's report in an effort to show that the defendants' work was done incorrectly and had to be redone.

The plaintiff contends that he offered ample evidence to show that he had incurred additional costs to complete and to repair the defendants' work and that those costs related to items that were contemplated under the original contract. Conversely, the fact finder found that "[t]he plaintiff did not offer any testimony or evidence from any of the trades he used to complete the project to support his claim that the defendants' work needed to be corrected, nor did he indicate what costs, if any, were attributable to the corrections. The plaintiff homeowner's testimony and the photographs offered into evidence did not establish anything other than unresolved issues and construction in progress." The fact finder noted that in August, 2003, when the inspection report was issued, many of the project items remained unresolved due to the parties' inability to agree on the applicable building code requirements for the plaintiff's proposed changes. The fact finder also noted that it was evident from the architect's testimony that the final project differed from the original plans.

Our careful review of the record reveals that there was sufficient evidence to support the fact finder's finding that the plaintiff failed to prove that he had incurred additional costs due to the defendants' breach. There was ample evidence that the plaintiff proposed numerous changes to the plans as the project progressed and that the parties did not incorporate those changes into the contract by written change order. Moreover, the record supports the fact finder's findings that the documents that the plaintiff offered to show the construction costs he had incurred to complete the project were so general that it was impossible to determine which costs, if any, were incurred to repair the defendants' work, and which may have related to change orders not contemplated in the original contract. Finally, although the plaintiff offered an August, 2003 home inspection report to show that the defendants' work required repair, the

state of the record supports the fact finder's finding that the inspector's report provided an inadequate evidentiary foundation for an award of damages equal to the costs allegedly incurred by the plaintiff in completing the project with the changes he had made while the project was underway. On this basis, we conclude that the court did not incorrectly determine that the fact finder's determinations were supported by the record.

## II

The plaintiff next claims that the court improperly considered the fact finder's determination of the scope of the work performed pursuant to the home improvement contract under the clearly erroneous standard of review. Specifically, the plaintiff argues that because the contract was clear and unambiguous, the interpretation of the contract involved a legal determination, which a fact finder is not empowered to make. Accordingly, the plaintiff claims that the court should have accorded plenary review to the fact finder's assessment of the scope of the contract.[3] In response, Frazao Building argues that because the terms of the contract were not clear and unambiguous, it was appropriate for the fact finder to attempt to assess the intent of the parties in forming the contract, an essentially fact bound determination. On that basis, the defendants argue that the

---

[3] The plaintiff additionally argues that the fact finder improperly concluded that general plumbing work was not contemplated under the original contract because it was referenced in the blueprints and incorporated by reference into the contract. We agree with the plaintiff that the fact finder's finding that plumbing was not included in the original contract may be clearly erroneous in light of the plumbing specifications set forth in the plans referenced in the contract. This point, however, does not advance the plaintiff's damages claims on appeal because the fact finder determined that the plaintiff had not met his burden of proof as to his claim for damages related to additional work performed after Frazao Building left the job. In other words, even if the fact finder erroneously determined that plumbing was not contemplated in the contract, the record does not belie her finding that the plaintiff failed to prove that the plumbing work completed by another contractor related to the original contract.

court properly assessed whether the fact finder's conclusions were clearly erroneous. We agree with the defendants.

In regard to the plaintiff's claim, we must determine whether the court employed the proper standard of review in assessing the fact finder's report, and, within this determination, we must assess whether the fact finder correctly determined that the scope of the work to be completed, as set forth in the contract, was uncertain. This issue presents a mixed question of law and fact, requiring us to assess applicable law as well as the record. Accordingly, our review is plenary. *Duperry* v. *Solnit*, 261 Conn. 309, 318, 803 A.2d 287 (2002) ("[q]uestions of law and mixed questions of law and fact receive plenary review"). "Under plenary review, we must decide whether the trial court's conclusions of law are legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Joyner* v. *Simkins Industries, Inc.*, 111 Conn. App. 93, 97, 957 A.2d 882 (2008).

Our initial task is to determine whether the contract at issue was ambiguous, thereby making the fact finder's interpretation of the contract's scope a factual determination. Our review of this issue is guided by the following principles. "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Honulik* v. *Greenwich*, 290 Conn. 421, 433, 963 A.2d 979 (2009).

"Well established principles guide our analysis in determining whether the language of a contract is ambiguous. [A] contract is ambiguous if the intent of

the parties is not clear and certain from the language of the contract itself. [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . In contrast, [a] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Jo-Ann Stores, Inc.* v. *Property Operating Co., LLC*, 91 Conn. App. 179, 190, 880 A.2d 945 (2005). We turn now to the relevant contract language.

The first paragraph of the contract states that "[w]e hereby propose to furnish all labor and materials—complete in accordance with the above specifications, for the sum of: $43,015.00." The second paragraph states that "[a]ll work to be performed for addition is very clearly explained in the job blue prints supplied by the home owner." The third paragraph states that "[t]he following changes have been discussed and approved for the following items, [i]nstall a basement [h]atchway to a full basement which does not appear on the prints for $1,025.00. Install [T]rex flooring to outside deck and covered porch for an additional $850.00. Reroof [the] front of the house to match the new addition for an additional $1,100.00. Install [h]eating radiators in [the] new addition and install to existing boiler for $3,500.00." A handwritten note beneath the third paragraph states: "All fixtures to be installed by plumber per plumber." The fourth paragraph provides the following payment schedule: the first payment of $8603 is to be paid at the contract signing, the second payment of $6682 is to be paid after the foundation is poured, the third payment of $13,366 is to be paid after the framing and roof are complete, the fourth payment of $6682 is to

be paid after the electrical and plumbing is installed, the fifth payment of $6682 is to be paid after the Sheetrock is completed and the final payment of $1000 is to be paid after all miscellaneous work is complete, for a total sum of $43,015. A handwritten note beneath the fourth paragraph states that "[t]he above payment schedule includes all charges and costs associated with the addition project . . . ."

We agree with the defendants' argument that it is not clear from the language of the contract whether the parties intended for the items listed in paragraph three to be included in the contract price of $43,015, or if they were additional costs. In paragraph three, the contract expressly states that the Trex flooring and roofing are to be installed for an additional fee. Beneath paragraph four, however, a handwritten note states that all charges and costs associated with the addition are included in the payment schedule. These two provisions appear to contradict one another, resulting in ambiguity. Moreover, the payment schedule, which totals $43,015, makes direct reference to certain project items but does not include any of the additional items listed in paragraph three.

On the basis of the foregoing, we conclude that the contract is ambiguous because the intent of the parties is not clear and certain from the language of the contract itself. See *Jo-Ann Stores, Inc.* v. *Property Operating Co., LLC*, supra, 91 Conn. App. 190. We further conclude that the fact finder's interpretation of the ambiguous contract was thereby a factual determination that the court properly considered under the clearly erroneous standard of review. See *Honulik* v. *Greenwich*, supra, 290 Conn. 433. Moreover, because the contract is ambiguous, it was not improper for the fact finder to look to the plaintiff to adduce sufficient evidence of the scope of the work contemplated in the contract as well as to prove that any additional work he had performed by

other contractors after Frazao Building left the job related to work contemplated in the contract.

## III

The plaintiff finally claims that the court improperly failed to find Frazao personally liable for the breach of contract. Specifically, the plaintiff argues that there was ample evidence showing that Frazao Building was under Frazao's complete control, Frazao used Frazao Building to the plaintiff's detriment, and, as such, Frazao should have been found individually liable under the "instrumentality rule." The plaintiff additionally contends that the question of whether the corporate veil should be pierced is one of law requiring plenary review. We do not agree.

"Whether the corporate veil should be pierced presents a question of fact, which we review under the clearly erroneous standard. . . . The instrumentality test for piercing the corporate veil . . . requires . . . proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Citation omitted; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Westview Carlton Group, LLC*, 108 Conn. App. 633, 640, 950 A.2d 522 (2008).

The fact finder stated in the supplemental findings of fact that "[t]he plaintiff did not establish a sufficient

basis for the imposition of damages against the defendant personally." The fact finder noted that all of the contract documents "clearly reflect that the plaintiff was engaging the services of . . . Frazao Building . . . and that he was dealing with the corporate entity." The fact finder also noted that although Frazao Building was responsible for some of the damages for the incomplete project, there was no wrongful or deceitful intent on its part or on the part of Frazao in abandoning the project. The fact finder also attributed the demise of the home improvement project to the plaintiff's architect, who was unable to resolve the issues that arose from the plaintiff's modifications to the original plans.

The record reveals that there is insufficient evidence to support finding Frazao individually liable. Frazao does not meet the first prong of the instrumentality rule because he does not have complete dominion over Frazao Building, as evidenced by the fact that he is an employee of Frazao Building, does not own any shares of it[4] and does not have exclusive control over its checkbook. Frazao's relationship to Frazao Building does not meet the second and third prongs of the instrumentality rule. Moreover, even if Frazao did have complete control of Frazao Building, no fraud was committed that resulted in an injury to the plaintiff. See *Connecticut Light & Power Co.* v. *Westview Carlton Group, LLC*, supra, 108 Conn. App. 640. Frazao Building did not abandon the project with the intent to defraud the plaintiff. Rather, it left the project due to frustration over a number of unresolved issues, including the determination of what the building code requirements were for the proposed modified bathroom and garage demising wall, which the defendants would have had to correct at their expense if the work failed to meet the local standards. Moreover, Frazao Building was found

[4] Frazao's mother and father each own 50 percent of Frazao Building's stock.

responsible for a portion of the homeowner's damages for the incomplete project. We conclude, therefore, that the court properly concluded that Frazao was not liable individually.

The judgment is affirmed.

In this opinion the other judges concurred.